1

SEYFARTH SHAW LLP
Robert E. Buch (SBN 60696)

2

rbuch@seyfarth.com
Jeffrey A. Berman (SBN 50114)

3

jberman@seyfarth.com

4

David D. Kadue (SBN 113578)
dkadue@seyfarth.com

5

Rishi Puri (SBN 252718)
rpuri@seyfarth.com

6

2029 Century Park East, Suite 3500

7

Los Angeles, California  90067-3021
Telephone:  (310) 277-7200

8

Facsimile:  (310) 201-5219

9

10

Attorneys for Plaintiff
MIAMI DOLPHINS, LTD.

FILED

10 AUG 31  PM 3: 18

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

11

UNITED STATES DISTRICT COURT

12

CENTRAL DISTRICT OF CALIFORNIA

13

MIAMI DOLPHINS, LTD.

14

Plaintiff,

15

16

v.

17

Fred Barnett, Chidi Ahantou, Gene
Atkins, Obafemi Ayambadejo, Aubrey

18

Beavers, John Bosa, Timothy Bowens,
Claude Brownlee, Larry Chester, Mark

19

Clayton, Joe Cribbs, Dwayne
Crutchfield, Donovan Darius, Autry

20

Denson, Mark Duper, David Frye,
Oronde Gadsden, Trent Gamble, Bryan

21

Gilmore, Kerry Glenn, Bill Gramatica,

22

Willey Green, Hugh Green, Cleveland
Green, Bobby Harden, Bruce Hardy, Ron

23

Hester, Mark Higgs, Sean Hill, Eddie
Hill, Michael Holmes, Damon Huard,

24

Jeff Hunter, Daryl Hunt, Tyoka Jackson,

25

Jim Jensen, Pete Johnson, Robert Jones,
Charles Jordan, William Judson, Ray

26

Lucas, Darrell Malone, O.J. McDuffie,
James McKnight, Timothy McKyer,

27

Frank Middleton, Eddie Moore, Oliver

28

Case No. CV10 6521 CBM (JCx)

**COMPLAINT TO COMPEL
ARBITRATION**

---

COMPLAINT

Case No. _____

1  Muhammed, Jaime Nails, Cliff Odom, )
2  Louis Oliver, Brett Perriman, Edward )
   Perry, William Poole, Derrick Rogers, )
3  Alphonso Roundtree, Tim Ruddy, Chris )
   Ruegamer, Lance Schulters, Derek )
4  Smith, Robert Sowell, Donnie  Spragan, )
   Daniel L. Stubbs, Patrick Swoopes, )
5  Rodell Thomas, Darius Thompson, )
6  Joseph Toledo, Lester Towns, Keith )
   Traylor, Ewe Von Schamann, Richmond )
7  Webb, Michael Williams, Jay Williams, )
   Robert Wilson, Shawn Wooden, Jimmy )
8  Wyrick AND DOE DEFENDANTS 1- )
   10, )
9                                          )
                                           )
10              Defendants.                )

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

Case No. _____

## JURISDICTION AND VENUE

1.       This is an action under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, to enforce a collective bargaining agreement, and jurisdiction is therefore conferred in this Court pursuant to 28 U.S.C. § 1331.

2.       The Miami Dolphins also seek to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*  The Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, to hear the claim based on the Federal Arbitration Act.

3.       Venue in the United States District Court for the Central District of California is appropriate inasmuch as this is the judicial district in which a substantial part of the events giving rise to the claim occurred—the filing of workers' compensation claims within the California Workers' Compensation System.  Accordingly, venue is appropriate under 28 U.S.C. § 1391(b).

## NATURE OF ACTION

4.       This action, filed by the Miami Dolphins, Ltd. ("Miami Dolphins"), seeks to compel arbitration of workers' compensation claims filed by former Miami Dolphins players.  These claims are subject to mandatory arbitration pursuant to a collective bargaining agreement that provides exclusive procedures for Miami Dolphins players to file claims for work-related injuries.

## THE PARTIES

5.       The Miami Dolphins are a professional football team and a member club of the National Football League ("NFL").

6.       Defendants are all former players for the Miami Dolphins who have submitted workers' compensation claims before the California Workers' Compensation Appeals Board ("WCAB").  A majority of Defendants' claims have

COMPLAINT
Case No. _____

1  been consolidated by the WCAB into master file Fred Barnett ADJ Number

2  6462780.

3  **FACTUAL ALLEGATIONS**

4       7.     All Defendants entered into a contract of employment with the

5  Dolphins.  Exhibit 1 contains a list of Defendants and the WCAB case numbers for

6  the California workers' compensation applications they have filed.

7       8.     All Defendants have for relevant times been represented by the

8  National Football League Players' Association ("NFLPA"), the exclusive

9  bargaining representative of employee players in the NFL.  The NFLPA and the

10  National Football League Management Council ("NFLMC") have entered into a

11  series of collective bargaining agreements ("CBAs") that generally have

12  determined the terms and conditions of the Defendants' employment with the

13  Dolphins.  Relevant excerpts from the 2006-2012 CBA are attached as Exhibit 2.

14       9.     Each Defendant also has separately entered into an agreement entitled

15  the "NFL Player's Contract" with the Dolphins.  The NFL Player Contract ("Player

16  Contract") is a standardized agreement bargained for between the NFLMC and the

17  NFLPA.  The NFL Player Contract generally provides that the contract is

18  governed by the laws of the state of Florida.  The Player Contract is incorporated

19  into the CBA (See Article XIV of Exhibit 2).

20       10.    For all relevant time periods, the CBA has required that, in any state

21  where workers' compensation coverage is not mandatory or where a football club

22  has elected to be excluded from coverage in the state workers' compensation

23  system, the football club must guarantee equivalent workers' compensation

24  benefits to its players.  Article LIV, Section 1 of Exhibit 2.

25       11.    Because Florida's workers' compensation law does not provide

26  workers' compensation benefits for professional athletes, for all relevant time

27  periods, the CBA has required the Miami Dolphins provide benefits equivalent to

28

2

Florida law as if Dolphins players were covered by Florida workers' compensation statutes.

12.     In accordance with this provision, in December, 1985, the NFLMC and the NFLPA executed an agreement entitled, "Implementation Agreement Regarding Local Processing of Miami Dolphins Workers' Compensation Claims." ("Implementation Agreement.")  The Implementation Agreement has been unchanged since 1985 and remains in effect to the present day.  A copy of the Implementation Agreement is attached as Exhibit 3.

13.     The Implementation Agreement states that "it is the intent of the parties to avoid litigation of workers' compensation claims by routinely resolving any issues or disputes which may arise between the [Miami Dolphins] and the player through a fair and reasonable application of the workers' compensation law." (Exhibit 3, paragraph 2).

14.     The Implementation Agreement requires the Dolphins to appoint a servicing agent to handle and process claims made by the Dolphins players, and empowers the servicing agent to authorize benefits equivalent to Florida Workers' Compensation benefits.  (Exhibit 3, paragraph 1).

15.     The Implementation Agreement prescribes the mandatory arbitration procedures for resolving disputes regarding the assessment of benefits for work-related injuries  (Exhibit 3, paragraph 3).  Because the parties agreed that "the establishment of  a local arbitration system is a more desirable method of determining entitlement to benefits," the Implementation Agreement provided for an independent panel of qualified arbitrators to resolve any disputes between the player and the Miami Dolphins concerning the assessment of benefits for work-related injuries.

16.     Defendants have reneged on their agreements to file claims for work-related injuries under the Implementation Agreement with the local servicing agent

3

1  and have instead filed workers' compensation claims related to the Miami

2  Dolphins before the WCAB.

3       17.    Pursuant to the CBA, the Player Agreement, and the Implementation

4  Agreement, the Dolphins have filed grievances under the CBA challenging

5  Defendants' failure to abide by their contractual obligation to submit their claims

6  for work-related injuries for processing pursuant to the Implementation

7  Agreement.  The Arbitrator, Shyam Das, has denied Defendants' motion to dismiss

8  the grievances, and set a hearing on this matter for November 16, 2010.

9       18.    The Dolphins have filed a series of motions before the WCAB,

10  challenging the failure of Defendants to abide by their contractual obligations.  In

11  response to these motions, the WCAB has consolidated the majority of the claims

12  into one action, *Fred Barnett* ADJ 6462780.  But the WCAB has not ruled on the

13  Dolphins' motion to dismiss the claims due to Defendants' failure to arbitrate their

14  workers' compensation claims.

15  **Count I - Defendants' Failure to Submit Claims To Arbitration (LMRA and**

16                  **the Federal Arbitration Act)**

17       19.    Plaintiff realleges and incorporates the foregoing paragraphs as if set

18  forth herein.

19       20.    In refusing to withdraw their WCAB claims, Defendants are violating

20  their obligations under the CBA, the Player Contract, and the Implementation

21  Agreement.

22       21.    Section 301 of the LMRA, 29 U.S.C. § 185, provides authority to seek

23  redress of a party's failure to abide by the terms of a collectively bargained

24  agreement.

25       22.    The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* provides the Court

26  with further authority to compel Defendants' workers' compensation claims into

27  arbitration.

28

4

## Count II - Declaratory Relief

23.     Plaintiff realleges and incorporates the foregoing paragraphs as if set forth herein.

24.     Plaintiff fears that additional football players will ignore their obligation to submit their claims for work-related injuries and instead improperly file claims with the WCAB.  Accordingly, Plaintiff seeks a judicial declaration that the CBA, the Player Contract, and the Implementation Agreement require that claims for work-related injuries against the Miami Dolphins be submitted only in accordance with the procedures outlined in the Implementation Agreement.

## PRAYER FOR RELIEF

25.     WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Enjoin Defendants from pursuing their claims for workers compensation benefits within the California Workers' Compensation system.

B.     Order Defendants to submit their workers' compensation claims to arbitration.

C.     Declare that the CBA, The Player Contract and the Implementation Agreement require that work-injury related claims be submitted only in accordance with the procedures outlined in the Implementation Agreement.

D.     To the extent the Court finds that Defendants' claims are subject to mandatory arbitration, a declaration that the CBA, Player Contract, and Implementation Agreement require arbitration of workers' compensation claims made against the Dolphins.

E.     Order Defendants to pay Plaintiff's attorneys fees, as allowed by law.

F.     Order such other relief as justice requires.

5

1

2      DATED:  August 31, 2010              SEYFARTH SHAW LLP

3

4                                          By _____

5                                             David D. Kadue
                                              Attorneys for Plaintiff
6                                             MIAMI DOLPHINS, LTD.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                      6

# EXHIBIT  1

Exhibit 1 to Complaint

| Name | ALJ Number |
| --- | --- |
| Fred Barnett | (ANA) ADJ6462780 |
| Chidi Ahantou | (AHM) ADJ3266130 |
| Gene Atkins | (ANA) ADJ4497272 |
| Obafemi Ayambadejo | (VNO) ADJ7053824 |
| Aubrey Beavers | (ANA) ADJ6970613 |
| John Bosa | (ANA) ADJ0409926 |
| Timothy Bowens | (ANA) ADJ6937982 |
| Claude Brownlee | (ANA) ADJ6947852 |
| Larry Chester | (ANA) ADJ6784339 |
| Mark Clayton | (AHM) ADJ0134282 |
| Joe Cribbs | (ANA) ADJ1392312 |
| Dwayne Crutchfield | (AHM) ADJ1462796 |
| Donovan Darius | (ANA) ADJ3492931 |
| Autry Denson | (ANA) ADJ6758722 |
| Mark Duper | (ANA) ADJ3866216 |
| David Frye | (AHM) ADJ7054849 |
| Oronde Gadsden | (ANA) ADJ6706460 |
| Trent Gamble | (ANA) Unassigned |
| Bryan Gilmore | (ANA) ADJ7087528 |
| Kerry Glenn | (ANA) ADJ0401339 |
| Bill Gramatica | (ANA) Unassigned |
| Willey Green | (AHM) ADJ7020612 |
| Hugh Green | (ANA) ADJ4260785 |
| Cleveland Green | (ANA) Unassigned |
| Bobby Harden | (AHM) ADJ6707121 |
| Bruce Hardy | (ANA) ADJ2150440 |
| Ron Hester | (ANA) ADJ2311067 |
| Mark Higgs | (ANA) ADJ1769648 |
| Sean Hill | (ANA) ADJ6707151 |
| Eddie Hill | (ANA) Unassigned |
| Michael Holmes | (ANA) ADJ6764238 |
| Damon Huard | (AHM) ADJ7153418 |
| Jeff Hunter | (ANA) ADJ6909928 |
| Daryl Hunt | (ANA) ADJ6726028 |
| Tyoka Jackson | (ANA) Unassigned |
| Jim Jensen | (ANA) ADJ6660502 |
| Pete Johnson | (ANA) ADJ4055145 |
| Robert Jones | (ANA) ADJ6903372 |

| | |
|---|---|
| Charles Jordan | (ANA) 6932977 |
| William Judson | (ANA) ADJ0410111 |
| Ray Lucas | (AHM) ADJ6784360 |
| Darrell Malone | (ANA) Unassigned |
| O.J. McDuffie | (ANA) ADJ6762914 |
| James McKnight | (ANA) ADJ1558712 |
| Timothy McKyer | (ANA) AD2757013 |
| Frank Middleton | (ANA) Unassigned |
| Eddie Moore | (VNO) ADJ7167017 |
| Oliver Muhammed | (ANA) ADJ6731544 |
| Jaime Nails | (ANA) ADJ6686334 |
| Cliff Odom | (ANA) ADJ2768074 |
| Louis Oliver | (ANA) ADJ3660105 |
| Brett Perriman | (ANA) ADJ927776 |
| Edward Perry | (ANA) Unassigned |
| William Poole | (AHM) ADJ6654042 |
| Derrick Rogers | (AHM) ADJ6927788 |
| Alphonso Roundtree | (ANA) ADJ6925786 |
| Tim Ruddy | (ANA) ADJ6784341 |
| Chris Ruegamer | (AHM) ADJ6981710 |
| Lance Schulters | (ANA) ADJ6909931 |
| Derek Smith | (AHM) ADJ2335455 |
| Robert Sowell | (ANA) ADJ7090733 |
| Donnie Spragan | (AHM) ADJ6995453 |
| Daniel L. Stubbs | (ANA) ADJ6733619 |
| Patrick Swoopes | (ANA) ADJ6708255 |
| Rodell Thomas | (ANA) ADJ7164510 |
| Darius Thompson | (ANA) ADJ6988932 |
| Joseph Toledo | (ANA) ADJ6430236 |
| Lester Towns | (ANA) ADJ1998843 |
| Keith Traylor | (ANA) Unassigned |
| Ewe Von Schamann | (ANA) ADJ6883927 |
| Richmond Webb | (ANA) ADJ3129234 |
| Michael Williams | (ANA) ADJ6814900 |
| Jay Williams | (ANA) ADJ365375 |
| Robert Wilson | (ANA) ADJ6660368 |
| Shawn Wooden | (ANA) ADJ892245 |
| Jimmy Wyrick | (VNO) ADJ6727604 |

# EXHIBIT 2



# NFL COLLECTIVE BARGAINING AGREEMENT
## 2006 - 2012

COLLECTIVE BARGAINING AGREEMENT
BETWEEN
THE NFL MANAGEMENT COUNCIL
AND
THE NFL PLAYERS ASSOCIATION
MARCH 8, 2006



**NFL PLAYERS**
A S S O C I A T I O N

# PREAMBLE

This Agreement, which is the product of bona fide, arm's length collective bargaining, is made and entered into as of the 8th day of March, 2006, in accordance with the provisions of the National Labor Relations Act, as amended, by and between the National Football League Management Council ("Management Council" or "NFLMC"), which is recognized as the sole and exclusive bargaining representative of present and future employer member Clubs of the National Football League ("NFL" or "League"), and the National Football League Players Association ("NFLPA"), which is recognized as the sole and exclusive bargaining representative of present and future employee players in the NFL in a bargaining unit described as follows:

1.      All professional football players employed by a member club of the National Football League;

2.      All professional football players who have been previously employed by a member club of the National Football League who are seeking employment with an NFL Club;

3.      All rookie players once they are selected in the current year's NFL College Draft; and

4.      All undrafted rookie players once they commence negotiation with an NFL Club concerning employment as a player.

Article I, Definitions

# ARTICLE I
## DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

*Section 1.* General Definitions:

(a)   "Agreement" means this Collective Bargaining Agreement.

(b)   "Class Counsel" means the law firm of Weil, Gotshal & Manges, 767 Fifth Avenue, New York, New York 10153, the law firm of Dewey Ballantine, LLP, 1301 Avenue of the Americas, New York, New York 10019, and the law firm of Lindquist & Vennum, 4200 IDS Center, Minneapolis, Minnesota 55402.

(c)   "Club" or "Team" or "Member," used interchangeably herein, means any entity that is a member of the NFL or operates a franchise in the NFL at any time during the term of this Agreement.

(d)   "Club Affiliate" or "Team Affiliate" means any entity or person owned by (wholly or partly), controlled by, affiliated with, or related to a Club or any owner of a Club.

(e)   "Commissioner" means the Commissioner of the NFL.

(f)   "Impartial Arbitrator" means the person authorized by this Agreement and the Settlement Agreement to hear and resolve specified disputes as provided in this Agreement and the Settlement Agreement.

(g)   "League Year" means the period from March 1 of one year through and including the last day of February of the following year, or such other one year period to which the NFL and the NFLPA may agree.

(h)   "NFL Player Contract" means the form of Player Contract utilized in the NFL.

(i)   "NFL Rules" means the Constitution and Bylaws, rules, and regulations of the NFL and/or the Management Council.

(j)   "Player Affiliate" means any entity or person owned by (wholly or partly), controlled by, affiliated with, or related to a player.

(k)   "Salary" means any compensation of money, property, investments, loans, or anything else of value that a Club pays to, or is obligated to pay to, a player or Player Affiliate, or is paid to a third party at the request of and for the benefit of a player or Player Affiliate, during a League Year, as calculated in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(l)   "Settlement Agreement" means the Stipulation and Settlement Agreement, dated February 26, 1993, as amended.

(m)   "Special Master" means the special master appointed and authorized by this Agreement and the Settlement Agreement to hear and resolve specified disputes as provided in this Agreement and the Settlement Agreement.

4

*Section 2.* Free Agency Definitions:

(n)    "Accrued Season" means any playing season for which a player received credit with respect to his qualifications for Unrestricted Free Agency or Restricted Free Agency, as described in Article XIX (Veteran Free Agency).

(o)    "Compensatory Draft Selection" means an additional Draft choice awarded to a Club as described in Article XIX (Veteran Free Agency) and Article XX (Franchise and Transition Players).

(p)    "Draft" or "College Draft" means the NFL's annual draft of Rookie football players as described in Article XVI (College Draft).

(q)    "Draft Choice Compensation" means the right of any Club, as described in Article XIX (Veteran Free Agency) and Article XX (Franchise and Transition Players), to receive draft pick(s) from any other Club.

(r)    "Drafted Rookie" means a person who is selected in the current League Year's Draft or whose Draft rights are held, or continue to be held, consistent with this Agreement, by an NFL Club that selected the Rookie in a prior Draft.

(s)    "Final Eight Plan" means the rules whereby signings of Unrestricted Free Agents are limited in Uncapped Years for the final eight playoff Clubs, under the limited circumstances described in Article XXI (Final Eight Plan).

(t)    "Free Agent" means a player who is not under contract and is free to negotiate and sign a Player Contract with any NFL Club, without Draft Choice Compensation or any Right of First Refusal.

(u)    "Minimum Salary" means the minimum annual Paragraph 5 Salary which shall be paid to an NFL player not on any Active list, and not on the Inactive list, pursuant to this Agreement.

(v)    "Minimum Active/Inactive List Salary" means the minimum annual Paragraph 5 Salary which shall be paid to an NFL player on any Active list, or on the Inactive list, pursuant to this Agreement.

(w)    "Negotiate" means, with respect to a player or his representatives on the one hand, and an NFL Club or its representatives on the other hand, to engage in any written or oral communication relating to efforts to reach agreement on employment and/or terms of employment between such player and such Club.

(x)    "New Club" means any Club except the Prior Club (as defined below).

(y)    "Player Contract" means a written agreement or series of such agreements executed at or about the same time between a person and an NFL Club pursuant to which such person is employed by such Club as a professional football player.

(z)    "Prior Club" means the Club that contracted with or otherwise held the NFL playing rights for the player for the previous NFL League Year.

(aa)    "Prior Year Salary" means the total of the Paragraph 5 Salary, roster and reporting bonuses, pro-rata portion of signing bonus, and other

5

Article I, Definitions

payments to a player in compensation for the playing of professional foot-ball for the last League Year of the player's most recently negotiated Player Contract, except for performance bonuses other than roster and reporting bonuses. Prior Year Salary shall also include any unrepaid loans made, guaranteed or collateralized by a Team or its Team Affiliate to a player or Player Affiliate.

(ab)    "Renegotiate" means any change in Salary or the terms under which such Salary is earned or paid, or any change regarding the Club's right to trade the player, during the term of a Player Contract.

(ac)    "Required Tender" means a Player Contract tender that a Club is required to make to a player pursuant to this Agreement, either as a matter of right with respect to the player, or to receive Rights of First Refusal, Draft Choice Compensation and/or other rights with respect to the player, as specified in this Agreement.

(ad)    "Restricted Free Agent" means a Veteran who has three or more Accrued Seasons and who completes performance of his Player Contract, but who is still subject to a Right of First Refusal and/or Draft Choice Compensation in favor of his Prior Club.

(ae)    "Right of First Refusal" means the right of an NFL Club, as described in Article XIX (Veteran Free Agency) and Article XX (Franchise and Transition Players) to retain the services of certain Veteran players by matching offers made to those players.

(af)    "Rookie" means a person who has never signed a Player Contract with an NFL Club.

(ag)    "Undrafted Rookie" means a Rookie who was eligible for but not selected in a College Draft.

(ah)    "Unrestricted Free Agent" means a Veteran who completes performance of his Player Contract, and who is no longer subject to any exclusive negotiating rights, Right of First Refusal, or Draft Choice Compensation in favor of his Prior Club.

(ai)    "Veteran" means a player who has signed at least one Player Contract with an NFL Club.

*Section 3.* Salary Cap Definitions:

(aj)    "Benefits" or "Player Benefit Costs" means the specific benefits paid to players set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(ak)    "Capped Year" means any League Year for which a Salary Cap is in effect.

(al)    "Total Revenues" or "TR" means all of the League and Team revenues that are included within the definition of Total Revenues, as set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(am)    "Guaranteed League-wide Salary" means the minimum amount that the Teams in the NFL must pay in Player Costs during a League Year, if

6

applicable, as set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(an)   "Minimum Team Salary" means the minimum amount that each Team must pay in Salaries during a League Year, if applicable, as set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), Section 5.

(ao)   "Paragraph 5 Salary" means the compensation set forth in paragraph 5 of the NFL Player Contract, or in any amendments thereto.

(ap)   "Player Costs" means the total Salaries and Benefits attributable to a League Year for all NFL Teams under all of the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), but not including loans, loan guarantees, unpaid grievances attributions, and unearned incentives.

(aq)   "Projected Benefits" means the amount of Benefits projected in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(ar)   "Projected Total Revenues" means the amount of Total Revenues projected in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(as)   "Room" means the extent to which a Team's then-current Team Salary is less than either the Salary Cap or Entering Player Pool, as applicable.

(at)   "Salary Cap" means the absolute maximum amount of Salary that each Club may pay or be obligated to pay or provide to players or Player Affiliates, or may pay or be obligated to pay to third parties at the request of and for the benefit of Players or Player Affiliates, at any time during a particular League Year, in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), if applicable.

(au)   "Team Salary" means the Team's aggregate Salary for Salary Cap purposes, as calculated in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(av)   "Uncapped Year" means any League Year for which a Salary Cap is not in effect.

*Section 4.* Further Definitions:

(aw)   "Final League Year" means the League Year which is scheduled prior to its commencement to be the final League Year of this Agreement. As of the date hereof, the Final League Year is the 2012 League Year. The Final League Year shall always be an Uncapped Year.

(ax)   "Final Capped Year" means the League Year immediately prior to the Final League Year. The Final Capped Year shall be Capped unless the Salary Cap is removed pursuant to Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), Section 2(b).

# ARTICLE II
# GOVERNING AGREEMENT

*Section 1.* **Conflicts:** The provisions of this Agreement supersede any conflicting provisions in the NFL Player Contract, the NFL Constitution and Bylaws, or any other document affecting terms and conditions of employment of NFL players, and all players, Clubs, the NFLPA, the NFL, and the Management Council will be bound hereby. The provisions of the Stipulation and Settlement Agreement, as *amended*, in <u>White</u> v. <u>NFL</u>, No. 4-92-906 (D. Minn.) ("Settlement Agreement"), shall supersede any conflicting provisions of this Agreement.

*Section 2.* **Implementation:** The NFLPA and the Management Council will use their best efforts to faithfully carry out the terms and conditions of this Agreement and to see that the terms and conditions of this Agreement are carried out in full by players and Clubs. The NFLPA will use its best efforts to see that the terms and conditions of all NFL Player Contracts are carried out in full by players.

*Section 3.* **Management Rights:** The NFL Clubs maintain and reserve the right to manage and direct their operations in any manner whatsoever, except as specifically limited by the provisions of this Agreement and the Settlement Agreement.

*Section 4.* **Rounding:** For the purposes of any amounts to be calculated or used pursuant to this Agreement with respect to Required Tenders, Qualifying Offers, Minimum Salaries, Minimum Active/Inactive List Salaries, Team Salary, Total Revenue ("TR"), Benefits, Player Costs, Projected TR, Projected Benefits, or Salary, such amounts shall be rounded to the nearest $1,000.

8

# ARTICLE III
# SCOPE OF AGREEMENT

*Section 1.* Scope: This Agreement represents the complete understanding of the parties on all subjects covered herein, and there will be no change in the terms and conditions of this Agreement without mutual consent. Except as otherwise provided in Article V (Union Security), Section 6, on Union Security, the NFLPA and the Management Council waive all rights to bargain with one another concerning any subject covered or not covered in this Agreement for the duration of this Agreement, including the provisions of the NFL Constitution and Bylaws; provided, however, that if any proposed change in the NFL Constitution and Bylaws during the term of this Agreement could significantly affect the terms and conditions of employment of NFL players, then the Management Council will give the NFLPA notice of and negotiate the proposed change in good faith.

*Section 2.* Arbitration: The question of whether the parties engaged in good faith negotiations, or whether any proposed change in the NFL Constitution and Bylaws would violate or render meaningless any provision of this Agreement, may be the subject of a non-injury grievance under Article IX (Non-Injury Grievance), which shall be the exclusive method for resolving disputes arising out of this Section 2. If the arbitrator finds that either party did not engage in good faith negotiations, or that the proposed change would violate or render meaningless any provision of this Agreement, he may enter an appropriate order, including to cease and desist from implementing or continuing the practice or proposal in question; provided, however, that the arbitrator may not compel either party to this Agreement to agree to anything or require the making of a concession by either party in negotiations.

Article XIV, NFL Player Contract

# ARTICLE XIV
## NFL PLAYER CONTRACT

*Section 1.* Form: The NFL Player Contract form attached hereto as Appendix C will be used for all player signings. This form cannot be amended without the approval of the Management Council and the NFLPA.

*Section 2.* Term: The NFL Player Contract shall expire on the last day of the last League Year subject to such Contract.

*Section 3.* Changes:

(a)     Notwithstanding Section 1 above, changes may be agreed to between a Club and a player in a player's contract or contracts consistent with the provisions of this Agreement and the Settlement Agreement.

(b)     The NFL Player Contract shall provide that, other than any rights the player may have as a member of the class in White v. NFL, No. 4-92-906 (D. Minn.) to object to the Settlement Agreement during its review by the District Court, the player waives and releases any claims: (i) arising out of, related to, or asserted in that action; and (ii) for conduct engaged in pursuant to the Settlement Agreement during the express term of the Settlement Agreement.

*Section 4.* Conformity: All Player Contracts signed prior to the execution of this Agreement and in effect during the term of this Agreement shall be deemed amended in such a manner to require the parties to comply with the mandatory terms of this Agreement and the Settlement Agreement.

*Section 5.* General, Notices, Prohibitions, etc.:

(a)(i) Any agreement between any player and any Club concerning terms and conditions of employment shall be set forth in writing in a Player Contract as soon as practicable. Each Club shall provide to the NFLMC a copy of each such Player Contract within two days of the execution of such contract by the player and the Club. The NFLMC shall provide to the NFLPA a copy of each executed Player Contract it receives from a Club within two business days of its receipt of such Player Contract. It is anticipated that each Club will send a copy of each such Player Contract to the NFLMC by overnight mail the day it is so executed, and the NFLMC will send a copy of such copy to the NFLPA by overnight mail the day it is so received. The NFLMC shall provide to the NFLPA any salary information received from a Club which is relevant to whether such Player Contract complies with Article XVII (Entering Player Pool) and/or Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), within two business days following the NFL's receipt of such information. Promptly upon but no later than two business days after the signing of any Veteran with less than three Accrued Seasons to a Player Contract, the signing

40

Club shall notify the NFLMC, which shall notify the NFLPA of such signing.

(ii) In the event that an Unrestricted Free Agent signs a Player Contract with a Club other than his prior Club between July 5 and July 15, the Player or his Agent shall promptly notify the Players Association, which will promptly notify the NFLMC in writing, and the New Club shall promptly notify the NFLMC, in writing, of such signing. If neither the NFLMC nor the Players Association has received any such written notice prior to midnight on July 15, such Player Contract shall be deemed not to have been signed within the signing period prescribed by Article XIX, Section 1(b)(i).

(b)     Any agreement between any player or Player Affiliate and any Club or Club Affiliate providing for the player to be compensated by the Club or Club Affiliate for non-football-related services shall be set forth in writing and disclosed and provided to the NFLMC within five business days of the execution or making of the agreement. The NFLMC shall provide such information to the NFLPA within two business days of the receipt of such information.

(c)     No Club shall pay or be obligated to pay any player or Player Affiliate (not including retired players) other than pursuant to the terms of a signed NFL Player Contract or a contract for non-football related services as described in Section 5(b) above. Nothing contained in the immediately preceding sentence shall interfere with a Club's obligation to pay a player deferred compensation earned under a prior Player Contract.

(d)     During the period any Salary Cap is in effect, in addition to any rights a Club may presently have under the NFL Player Contract, any Player Contract may be terminated if, in the Club's opinion, the player being terminated is anticipated to make less of a contribution to the Club's ability to compete on the playing field than another player or players whom the Club intends to sign or attempt to sign, or another player or players who is or are already on the roster of such Club, and for whom the Club needs Room. This Subsection shall not affect any Club or Club Affiliate's obligation to pay a player any guaranteed consideration.

(e)     No Player Contract may contain any individually negotiated provision transferring any player intellectual property rights to any Club or Club Affiliate or any Club sponsor.

(f)     No Club or player may agree upon any Player Contract provision concerning the termination of the contract that is inconsistent with the terms of this Agreement (including but not limited to the NFL Player Contract, Appendix C hereto), or the provisions of the NFL Constitution and Bylaws which are appended to the Side Letter dated July 24, 2006 from Harold Henderson to Eugene Upshaw, as they were operative and administered at the beginning date of the 2006 League Year (except any provisions relating to the 1982 CBA, which have been superseded by this Agreement). The parties disagree and reserve their rights with respect to whether a Player Contract may contain a commitment by the Club not to send a Qualify-

41

Article XIV, NFL Player Contract

ing Offer to an eligible player or not to designate a player as a Franchise or Transition player.

*Section 6.* Commissioner Disapproval:

   (a)     If the Commissioner disapproves a Player Contract for any reason, he must inform the NFLPA in writing of the reasons therefore by noon on the date following such disapproval.

   (b)     In the event the Commissioner disapproves any Player Contract as being in violation of the Salary Cap or Entering Player Pool, or any other provision of the Settlement Agreement or corresponding provision of this Agreement, the filing of an appeal of such disapproval pursuant to Article XV, Paragraph 5 or Article XXII, Paragraph 1 of the Settlement Agreement, or Article XXV, Section 5 or Article XXVI, Section 1 of this Agreement, shall automatically stay the Commissioner's disapproval, and the player shall continue to be free to practice and play for the Club, until the Special Master (or the District Court acting in lieu of the Special Master) issues its ruling. Provided, however, that in the event such Special Master appeal is filed within one week of or after the first scheduled regular season game of the Club: (i) the appeal shall be conducted in an expedited manner and shall be concluded within five (5) days of the filing date of such appeal; and (ii) the Special Master shall issue his ruling by the end of such five (5) day period. Provided, further, that, in the event the appeal is filed after the Club's first pre-season game, but before the date one week before the Club's first scheduled regular season game: (i) the appeal shall be conducted in an expedited manner and shall be concluded within ten (10) days of the filing date of such appeal; and (ii) the Special Master shall issue his ruling by the end of such ten (10) day period. If there is no ruling by the end of the periods prescribed in the preceding two sentences, or, for earlier filed appeals, by the day following the Club's third pre-season game, the automatic stay shall be dissolved. If the Commissioner disapproves a Player Contract for any of the reasons stated above on a second occasion for the same player during a given League Year, and determines that such player should not be able to play, there shall be no stay of such disapproval pursuant to this agreement, unless it is determined that the Commissioner's second disapproval is arbitrary or capricious. This agreement shall not prejudice or affect in any way, or constitute a waiver with respect to, any rights of class members to seek a stay or injunctive relief before the District Court, pursuant to the Federal Rules of Civil Procedure; nor shall it prejudice or affect in any way the rights of the NFL to oppose, or the arguments of the NFL in opposition, to such a stay.

*Section 7.* NFLPA Group Licensing Program: The NFL Player Contract shall include, solely for the administrative convenience and benefit of the player and the NFLPA, the provision set forth in Paragraph 4(b) of the NFL Player Contract (Appendix C hereto), regarding the NFLPA Group Licens-

42

ing Program. Neither the League nor any Club is a party to, or a beneficiary of, the terms of that provision. No Club may enter into any agreement with a Player or a Player Affiliate that is inconsistent with any rights granted to the NFLPA pursuant to Paragraph 4(b) of the NFL Player Contract; provided that this sentence is not intended and shall not be construed to override or restrict the rights granted to the Club and the League pursuant to Paragraph 4(a) of the NFL Player Contract.

*Section 8.* Good Faith Negotiation:
    (a)    In addition to complying with specific provisions in this Agreement, any Club or player engaged in negotiations for a Player Contract (including any Club extending, and any player receiving, a Required Tender) is under an obligation to negotiate in good faith.
    (b)    A Club extending a Required Tender must, for so long as that Tender is extended, have a good faith intention to employ the player receiving the Tender at the Tender compensation level during the upcoming season. It shall be deemed to be a violation of this provision if, while the tender is outstanding, a Club insists that such a player agree to a Player Contract at a compensation level during the upcoming season below that of the Required Tender amount. The foregoing shall not affect any rights that a Club may have under the Player Contract, under this Agreement, or under the Settlement Agreement, including but not limited to the right to terminate the contract, renegotiate the contract, or to trade the player if such termination, renegotiation, or trade is otherwise permitted by the Player Contract, this Agreement, or the Settlement Agreement.

*Section 9.* Limitations on Salary Forfeitures:
    (a)    No forfeitures of signing bonuses shall be permitted, except that players and Clubs may agree: (i) to proportionate forfeitures of a signing bonus if a player voluntarily retires or willfully withholds his services from one or more regular season games; and/or (ii) that if a player willfully takes action that has the effect of substantially undermining his ability to fully participate and contribute in either pre-season training camp or the regular season (including by willfully withholding his services in either pre-season training camp or during the regular season or willfully missing one or more games), the player may forfeit the greater of: (a) 25% of the prorated portion of his signing bonus for the applicable League Year for the first time such conduct occurs after the beginning of training camp until the end of the season for his Club, and the remaining 75% prorated portion of his signing bonus for the applicable year for the second time such conduct occurs during that period that year; or (b) the proportionate amount of his signing bonus allocation for each week missed (1/17th for each regular season week or game missed).
    (b)    If a player with a signing bonus forfeiture clause voluntarily retires and misses the remainder of the season, and the player then reports

Article XIV, NFL Player Contract

back to the Club in the subsequent season, then the Club must either (i) take the player back under his existing contract with no forfeiture of the remaining proportionate signing bonus allocation, or (ii) release the player and seek repayment of any remaining proportion of the signing bonus allocated to future League Years.

(c)     No forfeitures permitted (current and future contracts) for signing bonus allocations for years already performed, or for other salary escalators or performance bonuses already earned.

(d)     A player's right to receive and/or retain a signing bonus may not be conditioned on the player's participation in voluntary off-season programs or voluntary minicamps, or for adverse public statements, provided that the Club may have non-proratable participation bonuses for its off-season workout program.

(e)     Player Contracts may not contain individually negotiated provisions for forfeiture relating to violations of the Policy on Anabolic Steroids and Related Substances or the NFL Policy and Program for Substances of Abuse (which policies will address this issue), or for failing any drug test.

(f)     Except as provided above, existing contract forfeiture provisions entered into before the end of the 2005 regular season will be in full force and effect for the duration of the current contract, and any extensions resulting solely from effectuation of existing contract provision (e.g., option years). If a Player Contract with a forfeiture provision entered into before the end of the 2005 regular season is otherwise extended or renegotiated, the amount of Salary agreed to in the contract prior to its extension or renegotiation shall be subject to forfeiture to the same extent as provided prior to such extension or renegotiation.

(g)     For purposes of this Section 9, the terms "proportionate forfeitures" and "proportionate amount" mean 1/17th of that year's signing bonus allocation for each regular season week or game missed.

44

# ARTICLE LIV
## WORKERS' COMPENSATION

*Section 1.* Benefits: In any state where workers' compensation coverage is not compulsory or where a Club is excluded from a state's workers' compensation coverage, a Club will either voluntarily obtain coverage under the compensation laws of that state or otherwise guarantee equivalent benefits to its Players. In the event that a Player qualifies for benefits under this section, such benefits will be equivalent to those benefits paid under the compensation law of the state in which his Club is located.

*Section 2.* Rejection of Coverage: Nothing in this Article is to be interpreted as preventing a Club that has the legal right to do so from rejecting coverage under the workers' compensation law of its state. However, if a Club elects to reject coverage under the compensation law of its state, it must nevertheless guarantee benefits to its Players in the manner provided in Section 1 above. Moreover, any Club may be excluded from those laws if it elects to do so, but any such Club will be obligated to guarantee benefits to its Players in the same manner provided in Section 1 above.

*Section 3.* Arbitration: In any state where a Club (e.g., Miami Dolphins/Florida) has legally elected not to be covered by the workers' compensation laws of that state, the equivalent benefit, if any, to which a Player may be entitled under this Article will be determined under the grievance procedure of Article IX (Non-Injury Grievance).

*Section 4.* Workers' Compensation Offset Provisions: The parties agree that the following provisions shall exclusively govern any and all rights Clubs have with respect to workers' compensation credits or offsets during the remaining Capped Years of this Agreement.

(i)     "Dollar-for-Dollar" Credits or Offsets. No Club shall be entitled to claim or receive any dollar-for-dollar credit or offset for salary, benefits, or other compensation paid or payable to a Player against any award or settlement of workers' compensation benefits, either pursuant to Paragraph 10 of the NFL Player Contract or any provision of state law.

(ii)    "Time" Credits or Offsets. All Clubs are instead entitled only to a "time" credit or offset under Paragraph 10 of the NFL Player Contract or state law, as set forth more specifically in Subsections (A)-(F) below. This "time" credit or offset shall in all cases be expressed or granted as a reduction in the number of weeks of a Player's workers' compensation award or settlement that is attributable to the same period of weeks in which the Player is deemed entitled to salary payments or CBA benefits as described in this Section. The credit or offset shall be at the weekly rate specified under the state workers' compensation law in question. Because the period from the beginning of the regular season to the end of the League Year (25

227

Article LIV, Workers' Compensation

weeks) is approximately 1.5 times longer than the seventeen (17) week pe-
riod over which Players receive salary and/or Injury Protection payments,
the parties agree that, in calculating the "time" credit or offset as set forth
more particularly herein, the Club is entitled to a reduction of 1.5 weeks of
a Player's workers' compensation award or settlement for each week during
the regular season for which a Player is awarded or executes a settlement
agreement for workers' compensation benefits and for the same period of
weeks is paid his full Paragraph 5 salary or Injury Protection payments.

(A)     In the case of salary payments pursuant to Paragraph 5 or 9 of
the NFL Player Contract, the Club shall be entitled to a reduction of 1.5
weeks of a Player's workers' compensation award or settlement for each
week during the regular season in which the Player is physically unable to
perform his services under his contract due to an injury he suffers while
performing services during that contract year, to a maximum of 25 weeks,
provided that the Player receives his full salary as set forth in Paragraph 5 of
his contract for the period in question. For example, if a Player receives
three (3) weeks of Paragraph 5 salary subsequent to an injury that rendered
him unable to perform for three (3) games (regardless of whether the pay-
ments were made on a weekly or bi-weekly basis), the Club will be entitled
to a reduction of 4.5 (= 3 x 1.5) weeks of the Player's workers' compen-
sation award or settlement. As another example, if a Player receives seven-
teen (17) weeks of Paragraph 5 salary subsequent to an injury that rendered
him unable to perform all 16 games of the regular season (regardless of
whether the payments were made on a weekly or bi-weekly basis), the Club
will be entitled to a reduction of 25 (= 17 x 1.5) weeks of the Player's
workers' compensation award or settlement.

(B)     In the case of Injury Protection payments, a Club shall be enti-
tled to a reduction of 1.5 weeks of a Player's workers' compensation award
or settlement for each week from the beginning of regular season to the end
of the League Year that the Player receives full Injury Protection payments,
to a maximum of 25 weeks. For example, if a Player receives the Injury Pro-
tection payments for 17 weeks (regardless of whether the payments were
made on a weekly or bi-weekly basis), the Club will be entitled to a reduc-
tion of 25 weeks of the Player's workers' compensation award or settle-
ment. As another example, if a Player receives Injury Protection payments
for three (3) weeks but then signs a contract for that season with another
Club such that benefits payments cease, the Club will be entitled to a re-
duction of 4.5 weeks of the workers' compensation award or settlement. In
the event that a Club pays a Player full Injury Protection payments prior to
the first regular season game of the League Year, the Club will be entitled to
a reduction of 1.5 weeks of the Player's workers' compensation award or
settlement for each week during the regular season to the end of the League
Year for which the Player's Injury Protection payments are made.

(C)     Nothing in this Section 4 shall be interpreted to preclude a Club
from receiving the "time" credit or offset set forth in this Section for both

228

salary payments and Injury Protection payments when both payments are made.

(D)     In the event that an Injury Grievance, Injury Protection, injury guarantee, or other arbitrable claim where workers' compensation offsets or credits is at issue and within the jurisdiction of the arbitrator, is settled between the Player and the Club, or in the event that a Club and Player execute an injury-related settlement agreement, the Club shall be entitled to a reduction of 1.5 weeks of a Player's workers' compensation award or settlement for each week that the Player is deemed entitled to receive his full Paragraph 5 salary or Injury Protection payments pursuant to the settlement, to a maximum of 25 weeks. The Club and Player shall be required to specify in the written settlement agreement the number of weeks for which the Player is receiving his full Paragraph 5 salary or Injury Protection payments under the settlement so that the appropriate number of weeks of the Player's workers' compensation award or settlement can be reduced. For example, if a Player and a Club settle an Injury Grievance, Injury Protection or injury guarantee claim for a specified period of three (3) weeks, the Club will be entitled to a reduction of 4.5 (= 3 x 1.5) weeks of the Player's workers' compensation award or settlement.

(E)     In the event that an Arbitrator awards Paragraph 5 salary or Injury Protection payments in an Injury Grievance, Injury Protection, injury guarantee, or other arbitrable claim where workers' compensation offsets or credits is at issue and within the jurisdiction of the arbitrator, for the same period of weeks for which a Player has already been awarded workers' compensation benefits or received a workers compensation settlement, the Club shall be entitled to a reduction of 1.5 weeks of the Player's workers' compensation award or settlement for each week the Player is deemed entitled to receive his full Paragraph 5 salary or Injury Protection payments pursuant to the Arbitrator's award. For example, if an Arbitrator awards a Player three (3) weeks of Paragraph 5 salary pursuant to an Injury Grievance award and the Player has already been awarded workers' compensation benefits or received a workers' compensation settlement for that same period, the Arbitrator shall reduce the award by an amount equal to 4.5 (= 3 x 1.5) weeks of workers' compensation benefits.

(F)     Clubs are not entitled to any credit or offset under this Article against any workers' compensation benefits attributable to the period of time after the last League Year for which the Player is entitled to receive salary payments (or, in cases where the Player receives Injury Protection payments, after such period) from the Club, even if the Player's entitlement to such payments is not determined until after the League Year in question. No payment of any of the following may be used by a Club as a basis for claiming any workers' compensation credit or offset under this Article:

(1) Signing bonus;

229

Article LIV, Workers' Compensation

(2) Option bonus;

(3) Roster bonus;

(4) Incentive bonus;

(5) Performance-based pay earned prior to the date of injury (unless, for any period of time in which a Club would otherwise be entitled to a credit or offset pursuant to this Section, the Player's weekly salary would be less than the amount of weekly workers' compensation benefits payable under state law, in which case the performance-based pay could be added by the Club to the Player's Paragraph 5 salary for those weeks in which the Club would be entitled to a credit or offset under this Section);

(6) Deferred compensation (except where the deferred compensation is salary attributable to the weeks for which the Player has been awarded or has executed a settlement agreement for workers' compensation benefits as described in this Section in which case the Club is permitted a credit or offset in the same manner as if the salary was not deferred and instead was paid during the League Year in which the Player was physically unable to perform his services under his NFL Player Contract due to an injury he suffered while performing services during that contract year);

(7) Severance pay; or

(8) Any other form of compensation other than Paragraph 5 salary under the NFL Player Contract or Injury Protection payments under the CBA.

(G) Total and Permanent, Line of Duty and Degenerative Disability Benefits paid pursuant to the Bert Bell/Pete Rozelle NFL Player Retirement Plans and/or related documents are not subject to any credit or offset for workers' compensation benefits, whether or not those benefits are payable during the same period in which the disability payments are payable. Clubs are not entitled to any credit or offset under this Article for any workers' compensation benefits payable to any Player against any payments made to any Player under the Bert Bell/Pete Rozelle NFL Player Retirement Plans and/or related documents; provided, however, that the receipt of such disability payments by the Player shall not affect the Club's right to claim or

230

receive any offsets or credits set forth elsewhere in this Article.

(iii)   Pending cases. The parties agree to settle those Players' workers' compensation claims and related cases that were pending or in any stage of appeal as of March 8, 2006, and thereafter in which a Player or former Player has claimed entitlement to workers' compensation benefits on account of an injury or injuries suffered while performing services under a NFL Player Contract and in which a Club is claiming any entitlement to a credit or offset greater than the credit or offset provided herein; all such settlements shall limit credits or offsets as set forth in this Article, regardless of any awards or decisions already entered in any particular case. Clubs specifically reserve the right to maintain any defenses they may have in such pending cases that are unrelated to the offset issue.

(iv)   Remedies. If, after March 8, 2006, despite the terms of this Article and the Clubs' obligation to comply with Subsection (iii) and all other provisions of this Article, a state court or other competent authority nevertheless renders a decision or other determination with an outcome inconsistent with the terms of this Section 4, then the Player shall have a right to immediate payment from the Club for the amount of any difference between such outcome and the outcome specified in Subsections (i)-(ii) above. A Player may initiate a claim under this Section by filing a written notice by certified mail or fax with the Management Council and furnishing a copy to the Club involved. The claim shall set forth the name of the matter and jurisdiction in which the improper award was made, the amount of payment requested and the basis for the calculation. The claim must be initiated within 45 days of either the date of execution of this Agreement or the date of any adverse order (whichever is later); provided, however, that in the event the Player files an appeal of any adverse order, the time for the Player to notify the Club will begin to run from the date the appeal is decided.

(v)   Time-Offset Fund. The NFL shall establish a fund which shall bear the cost of additional benefits or associated insurance and related costs (exclusive of professional fees, administrative overhead, penalties or similar costs) incurred by any Club as a direct result of the adoption of this Section 4. The parties shall use their best efforts to ensure that all parties involved including the Clubs and their insurance carriers will implement this Subsection (v) in such a manner as to minimize the costs and expenses associated with this fund.

(vi)   Disputes. Any dispute concerning the operation of Section 4 and/or any payments to a Player under Subsection (iv) will be determined under the grievance procedure of Article IX (Non-Injury Grievance).

*Section 5.* Preservation of Rights: Beginning as of the Final League Year, the NFLPA and the Clubs preserve their prior positions (i.e., prior to March 8, 2006) with regard to the applicability and legality of workers' compensation offset provisions under state law, and nothing in this Article shall be-

Article LIV, Workers' Compensation

ginning in the Final League Year prevent any Player from claiming that an offset provision is not legally binding upon him or prevent any Club from asserting that an offset provision (including, but not limited to, a state statute providing a Club with a dollar-for-dollar credit) is legally binding upon a Player.

232

**EXHIBIT 3**

IMPLEMENTATION AGREEMENT REGARDING LOCAL
PROCESSING OF MIAMI DOLPHINS WORKERS'
COMPENSATION CLAIMS

The NFL Players Association (NFLPA) and the NFL Management
Council (NFLMC) hereby agree to the following Implementation
Agreement dealing with local processing of workers' compensation
claims made to the Miami Dolphins. It is the intention of the
parties that this procedure provide the "equivalent benefits"
referred to in Article XXXIII of the 1977 Collective Bargaining
Agreement and Article XXXVI of the 1982 Collective Bargaining
Agreement.

1. In order to insure the efficient and expeditious process-
ing of pending and future claims of workers' compensation
benefits by its players, the Miami Dolphins will appoint, as soon
as practicable, a servicing agent who is knowledgeable about, and
experienced in handling claims under, the Florida Workers Compen-
sation Law. The Dolphins will furnish the name(s), addresses and
phone numbers of the person(s) appointed to act as its servicing
agent to the NFLPA and the NFLMC. The servicing agent shall be
readily available to answer inquiries and process claims made by
Dolphin players or their representatives. The Dolphins shall
allow its servicing agent to routinely authorize medical care and
pay appropriate workers' compensation benefits within reasonable
limits without having to seek additional authority from the Dol-
phins. The Dolphins will designate a representative of their
choice to act as liaison between the players and the servicing
agent.

2. The workers' compensation rights and benefits to which
Miami Dolphin players are entitled are the same as those set
forth for other employees in the Florida Workers' Compensation
Law, as amended, and as interpreted in the Florida Courts except
as modified by this Agreement and the 1977 and 1982 CBAs. It is
the intent of the parties to avoid litigation of workers' compen-
sation claims by routinely resolving any issue or disputes which
may arise between the servicing agent and the player through a
fair and reasonable application of the Florida Workers' Compensa-
tion Law.

3. In the event a dispute arises which cannot be amicably
resolved between the servicing agent and the player, the pro-
cedures set forth below will be followed to achieve a swift,
final and binding resolution of the dispute. The Dolphins
players as professional athletes do not have access to state
workers' compensation officials or the state workers' compen-

sation agency.  Although the 1982 CBA provides that the method of
determining what benefits a player will be entitled to shall be
the non-injury grievance procedure of that document, the parties
agree that the establishment of a local arbitration system is a
more desirable method of determining entitlement to benefits.
Accordingly, an independent panel of arbitrators shall be estab-
lished to determine equivalent benefits. It is the intent of the
parties to equate this arbitration procedure to the Florida Work-
ers' Compensation Law to the extent possible except as modified
by this Agreement and the 1977 and 1982 CBAs.

    4.  The player will be responsible to report his reasonably
ascertainable injuries to the Dolphins' trainers or doctors
orally or in writing within 30 days of the occurrence of such
injuries. The Dolphins in accordance with their usual practices
will keep written trainers' and medical records relating to such
injuries. The Dolphins shall make all medical records easily
accessible to its servicing agent so any injury can be quickly
and easily authenticated thereby expediting appropriate process-
ing of a claim. Upon the filing of a claim, the servicing agent
shall make the player's medical records available to the player
and his representative in accordance with the Florida Workers'
Compensation Law.

    5.  A player employed or formerly employed by the Miami Dol-
phins may make a written claim for workers' compensation benefits
with the Dolphins or its servicing agent at any time within the
statute of limitations set forth in the Florida Workers' Compen-
sation Law.  Any player or former player who previously filed a
written notice or claim for workers' compensation benefits with
the Dolphins, its servicing agent or the Florida Division of
Workers' Compensation within the statute of limitations set forth
in the Florida Workers' Compensation Law shall have the opportun-
ity to process his claim with the Dolphins servicing agent and,
if necessary, litigate his claim on the merits in accordance with
the procedures of this Agreement.

    6.  If the Dolphins or its servicing agent fails or ceases,
in the opinion of the player, to provide the appropriate or
adequate medical benefits or compensation benefits , the player,
his representative, or the NFLPA may file a written grievance
with the servicing agent of the Dolphins, with copies provided to
the Dolphins, the NFLMC and the NFLPA.  The servicing agent will
answer the grievance within 14 days, setting forth the basis for
the denial, cessation, or decrease of the benefit.

    7.  If the player or former player or the NFLPA wishes to
contest the denial, cessation, or decrease of a benefit by the

servicing agent or the Dolphins, he or his representative or the
NFLPA must file an appeal letter within 30 days of the receipt of
the answer (or within 30 days of the expiration of the 14 day
period to answer if no answer is filed) to the Notice Arbitrator
to be appointed under this Implementation Agreement with copies
sent to the servicing agent, Miami Dolphins, the NFLMC and the
NFLPA. The Notice Arbitrator will assign the case to himself or
one of the other two (2) arbitrators to be appointed under this
Agreement and will schedule a hearing date in Miami within 60
days of his receipt of the appeal letter. The Notice Arbitrator
will consult with the parties and the other arbitrators regarding
their availability, but he must schedule a hearing date within 60
days of his receipt of the appeal letter unless the parties
jointly agree to a postponement. If a scheduled hearing date is
canceled, any cancellation fee will be borne by the canceling
party. The arbitrator to whom the case was assigned will re-
schedule the case within 30 days of the postponed date. If that
arbitrator cannot reschedule the hearing within 30 days, or on a
date acceptable to both parties, he will notify the Notice Arbi-
trator who will reassign the case to another member of the panel
if a member has a hearing date available within the thirty day
period.

8.   At the hearing, the parties to the grievance and the
NFLPA and the NFLMC will have the right to present, by testimony
or otherwise, any evidence relevant to the grievance. In con-
ducting the hearing and reaching a decision the arbitrators will
be bound by the Florida Workers' Compensation Law and the rules
of procedure applicable to workers' compensation claims to the
extent possible. The arbitrator's decision will be final and
binding on the parties unless appealed within 30 days to the
Notice Arbitrator of the Non-Injury Grievance panel under Article
VII of the 1982 CBA. The scope of review of such appeal shall be
that appropriate to appellate review of Florida administrative
compensation awards. The parties shall have the opportunity to
file briefs and/or make oral arguments unless waived by mutual
consent.

9.   With the exception of cancellation fees, the arbitrator's
fees will be paid jointly by the NFLPA and the NFLMC. All other
costs will be borne in accordance with the Florida Workers'
Compensation Law and the rules of procedure applicable to
workers' compensation claims in Florida to the extent possible.
The rulings and decisions issued by the arbitrators appointed
under this Agreement shall be applicable only to Florida workers'
compensation claims arising under Article XXXIII of the 1977 CBA
or Article XXXVI of the 1982 CBA and shall have no application to
other Articles of the CBA or to other teams which may come under
the provisions of Article XXXVI in the future.

10.   The parties shall have 45 days from the signing of this Implementation Agreement to voluntarily select a Notice Arbitrator and two (2) other arbitrators who will serve under this Agreement.  The arbitrators shall all possess expertise and at least 5 years experience in handling claims under the Florida Workers' Compensation Law, be qualified to administer oaths and reside in the Miami area.  If after 45 days there are one or more vacancies on the panel, the Senior Deputy Commissioner for Miami of the Florida Department of Labor and Employment Security, Division of Workers' Compensation, will be asked to submit to the parties within ten (10) days a list of ten (10) names of persons who posses the qualifications set forth above.  Within ten (10) days of the receipt of that list the parties shall meet to alternately strike one name from the list until the number of names on the list matches the number of vacancies to be filled.  If at that time a Notice Arbitrator has not been agreed upon, the parties shall choose one of the three names at random and name that arbitrator as the Notice Arbitrator.  Whenever vacancies occur on this panel of arbitrators the parties shall follow the same procedures in order to fill the vacancies.  Arbitrators appointed to the panel may be removed by either party by giving written notice of such removal to the arbitrator and to the other party during the period beginning on June 1 through June 15 of each year.

11.   The following areas of the Florida Workers' Compensation Law will not apply:

a. criminal penalties

b. special disability fund

c. services provided by the Division of Workers' Compensation or by the Deputy Commissioners, except as set forth herein

Any disputes regarding the agreement of the parties to exclude certain provisions of the Florida Workers' Compensation Law from this Agreement shall be resolved through negotiation of the parties or by the arbitration procedure set forth in Article VII of the 1982 CBA.

12.   As soon as practicable after the execution of this Agreement the Miami Dolphins will join the Florida workers' compensation self-insurance guarantee fund or buy separate insurance to guarantee payment of workers' compensation benefits in the event the Miami Dolphins cease to exist under the same circumstances covered by the Florida Workers' Compensation Law. The Dolphins will provide documentation of said coverage to the NFLMC at the time of its initiation and at the time of renewal of

said coverage. The receipt of said documentation shall be noticed to the NFLPA and non-confidential portions of the documentation shall be available for inspection by the NFLPA upon reasonable notice.

13. In consideration for the provision of the workers' compensation benefits provided by the 1977 and 1982 Collective Bargaining Agreements, the NFLPA on behalf of players or former players of the Dolphins grants the Dolphins the same immunities from suit by those players and their families that other employers in Florida enjoy with respect to such suits on account of coverage under the Florida Workers' Compensation Law. It is the position of the NFLMC that such immunity has been conferred by virtue of the provisions of the 1977 and 1982 Collective Bargaining Agreements which granted the players equivalent benefits.

14. The terms of this Implementation Agreement shall commence on the date it is executed by both parties and will expire three (3) years from the date of execution.

15. This Implementation Agreement is hereby agreed to, signed and put into effect by the undersigned collective bargaining representatives on this _20th_ day of _December_, 1985.


JACK DONLAN
Executive Director
NFL Management Council


GENE UPSHAW
Executive Director
NFL Players Association

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV10- 6521 CBM (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

SEYFARTH SHAW LLP
Robert E. Buch (SBN 60696)
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | CASE NUMBER |
|---|---|---|
| MIAMI DOLPHINS, LTD. | PLAINTIFF(S) | CV10 6521 CBM (JCx) |
| v. | | |
| FRED BARNETT, et al. | | SUMMONS |
| *See attached* | DEFENDANT(S). | |

TO:   DEFENDANT(S): Fred Barnett (see attached page for additional defendants).

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Robert E. Buch_____, whose address is _Seyfarth Shaw LLP, 2029 Century Park East, Suite 3500, Los Angeles, CA 90067-3021_.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: AUG 3 1 2010 _____

By: _____
CHRISTOPHER POWERS

Deputy Clerk

*(Seal of the Court)*   SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## SUMMONS - COMPLETE LIST OF DEFENDANTS

Fred Barnett
Chidi Ahantou
Gene Atkins
Obafemi Ayambadejo
Aubrey Beavers
John Bosa
Timothy Bowens
Claude Brownlee
Larry Chester
Mark Clayton
Joe Cribbs
Dwayne Crutchfield
Donovan Darius
Autry Denson
Mark Duper
David Frye
Oronde Gadsden
Trent Gamble
Bryan Gilmore
Kerry Glenn
Bill Gramatica
Willey Green
Hugh Green
Cleveland Green
Bobby Harden
Bruce Hardy
Ron Hester
Mark Higgs
Sean Hill
Eddie Hill
Michael Holmes
Damon Huard
Jeff Hunter
Daryl Hunt
Tyoka Jackson
Jim Jensen
Pete Johnson
Robert Jones

Charles Jordan
William Judson
Ray Lucas
Darrell Malone
O.J. McDuffie
James McKnight
Timothy McKyer
Frank Middleton
Eddie Moore
Oliver Muhammed
Jaime Nails
Cliff Odom
Louis Oliver
Brett Perriman
Edward Perry
William Poole
Derrick Rogers
Alphonso Roundtree
Tim Ruddy
Chris Ruegamer
Lance Schulters
Derek Smith
Robert Sowell
Donnie Spragan
Daniel L. Stubbs
Patrick Swoopes
Rodell Thomas
Darius Thompson
Joseph Toledo
Lester Towns
Keith Traylor
Ewe Von Schamann
Richmond Webb
Michael Williams
Jay Williams
Robert Wilson
Shawn Wooden
Jimmy Wyrick

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| MIAMI DOLPHINS, LTD. | Fred Barnett et. al. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| David D. Kadue (SBN 113578)<br>SEYFARTH SHAW LLP<br>2029 Century Park East, Suite 3500<br>Los Angeles, California 90067-3021<br>(310) 277-7200 telephone  (310) 201-5219 facsimile | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant     ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No     ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Complaint to Compel Arbitration under 29 U.S.C. § 185 (the LMRA) and under 9 U.S.C. § 1 (the Federal Arbitration Act)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☒ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | **IMMIGRATION** | ☐ 445 American with Disabilities – Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

| FOR OFFICE USE ONLY: | Case Number: | CV10 6521 |
|---|---|---|

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

American LegalNet, Inc.<br>www.FormsWorkflow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
  ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Florida |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Please see attached sheet | Please see attached sheet |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
  **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, CA; Orange County, CA. | Florida |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _[signature]_   Date 8/31/2010

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)   CIVIL COVER SHEET   Page 2 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

## LIST OF DEFENDANTS' RESIDENCY

### I.   DEFENDANTS WITH RESIDENCY IN CALIFORNIA

| Name | Residence |
|------|-----------|
| Obafemi Ayambadejo | San Diego County, CA |
| Donovan Darius | Contra Costa County, CA |
| Michael Holmes | Orange County, CA |
| Derek Smith | San Diego County, CA |
| Donnie Spragan | Los Angeles County, CA |
| Joseph Toledo | Orange County, CA |

### II.   DEFENDANTS WITH RESIDENCY OUTSIDE CALIFORNIA

| Name | Residence |
|------|-----------|
| Fred Barnett | Pennsylvania |
| Chidi Ahantou | Florida |
| Gene Atkins | Texas |
| Aubrey Beavers | Texas |
| John Bosa | Florida |
| Timothy Bowens | Florida |
| Claude Brownlee | Ohio |
| Larry Chester | Georgia |
| Mark Clayton | Texas |

| Joe Cribbs | Alabama |
| --- | --- |
| Dwayne Crutchfield | Ohio |
| Autry Denson | Florida |
| Mark Duper | Florida |
| David Frye | Ohio |
| Oronde Gadsden | Florida |
| Trent Gamble | Florida |
| Bryan Gilmore | Texas |
| Kerry Glenn | Florida |
| Bill Gramatica | Florida |
| Willey Green | Georgia |
| Hugh Green | Mississippi |
| Cleveland Green | Mississippi |
| Bobby Harden | Florida |
| Bruce Hardy | Florida |
| Ron Hester | Florida |
| Mark Higgs | Florida |
| Sean Hill | Florida |
| Eddie Hill | Florida |
| Damon Huard | Washington |
| Jeff Hunter | Georgia |
| Daryl Hunt | Texas |

| | |
|---|---|
| Tyoka Jackson | Florida |
| Jim Jensen | Florida |
| Pete Johnson | Ohio |
| Robert Jones | Texas |
| Charles Jordan | Georgia |
| William Judson | Georgia |
| Ray Lucas | New Jersey |
| Darrell Malone | Florida |
| O.J. McDuffie | Florida |
| James McKnight | Florida |
| Timothy McKyer | North Carolina |
| Frank Middleton | Texas |
| Eddie Moore | North Carolina |
| Oliver Muhammed | Arizona |
| Jaime Nails | Florida |
| Cliff Odom | Texas |
| Louis Oliver | Florida |
| Brett Perriman | Georgia |
| Edward Perry | Florida |
| William Poole | New York |
| Derrick Rogers | Florida |
| Alphonso Roundtree | Texas |

| | |
|---|---|
| Tim Ruddy | Colorado |
| Chris Ruegamer | Nevada |
| Lance Schulters | New Jersey |
| Robert Sowell | Mississippi |
| Daniel L. Stubbs | Florida |
| Patrick Swoopes | Mississippi |
| Rodell Thomas | Florida |
| Darius Thompson | Texas |
| Lester Towns | North Carolina |
| Keith Traylor | Oklahoma |
| Ewe Von Schamann | Oklahoma |
| Richmond Webb | Texas |
| Michael Williams | Florida |
| Jay Williams | North Carolina |
| Robert Wilson | Texas |
| Shawn Wooden | Florida |
| Jimmy Wyrick | Texas |